480 P.2d 354

**The STATE of Arizona, Appellee,**

v.

**Eugene Jessie DAVIS, Appellant.**

**No. 2066.**

Supreme Court of Arizona,
In Division.

Feb. 5, 1971.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Lee V. Bakunin, Phoenix, for appellant.

CAMERON, Justice.

The appellant, Eugene Jessie Davis, by delayed appeal, seeks to have his guilty plea set aside on the ground that the trial court should have, on its own motion, ordered a hearing pursuant to Rule 250 Rules of Criminal Procedure, 17 A.R.S. In the alternative, the appellant seeks a Rule 250 hearing at this time.

The facts disclose that the appellant pleaded guilty to armed robbery on 8 May 1969. Nothing in the record at that time indicated that the appellant was under any mental disability. The trial court questioned the defendant extensively concerning the voluntariness of the plea concluding:

"THE COURT: Is there anything about the proceedings here you feel you don't understand, or any questions you wish to ask your attorney?

"A. No.

"THE COURT: Very well. Let the record show the Court will grant the motion of the Public Defender to withdraw the former plea of not guilty and enter a plea of guilty.

The Court finds the defendant's plea of guilty is being made knowingly, voluntarily and intelligently with an understanding of the consequences, and no promise of immunity or threats of any kind have been made to make him change his plea.

It is ordered that the Court will accept the plea of guilty and enter it on the record."

Count II, assault with a deadly weapon, was dismissed upon the entry of the guilty plea to Count I. Defendant was on probation for a previous offense, burglary, second degree.

Sentencing was set for six days later, on 14 May 1969. On that date, the trial court had before it a presentence report that stated that the appellant was mentally retarded, but indicated that he was not mentally insane. The presentence report, *inter alia*, gave the following information. The appellant was then 25 years old, he had completed the eighth grade, he had an I.Q. of about sixty or seventy, he had attended two schools for mentally retarded children for a total period of 2½ years, and he had previously been a patient at the Arizona State Hospital on three different occasions. The presentence report advised that Dr. Whitney of the Arizona State Hospital was of the opinion that the appellant would not respond to further treatment as a resident patient, and that Dr. Whitney felt that the appellant could be treated as effectively as an outpatient. However, the report added that the appellant's mother had stated that the appellant would not take any medications as an outpatient. The presentence report expressly stated in several passages that the appellant was mentally retarded, but the report also mentioned that the appellant "does know right from wrong."

The presentence report while recommending that the appellant be denied probation, stated:

"It is the opinion of the probation officer that the defendant does not belong in the Arizona State Prison due to his mental deficiencies."

The record does not indicate whether appellant's attorney had seen the probation report, but the attorney did know something of appellant's mental background.

The appellant's attorney did not ask the trial court under Rule 333, Rules of Criminal Procedure, 17 A.R.S., to postpone pronouncement of sentence until a sanity hearing was held. Rather, he did ask that the trial court take the appellant's background and mental condition into consideration.

The trial court then sentenced the appellant to the Arizona State Prison for a term of not less than five nor more than 10 years. However, the trial court added the following provision, which gave rise to this appeal:

"It is further recommended to the Warden of the Arizona State Penitentiary that he make every possible effort to incarcerate you in the Arizona State Hospital for treatment."

To date, the appellant is incarcerated in the Arizona State Prison and presumably no attempt has been made to transfer the appellant to the Arizona State Hospital.

§ 13–1621 A.R.S. reads as follows:

"*§ 13–1621. Trial, conviction or punishment of persons suffering from mental illness or defect*

"A person shall not be tried, convicted or punished for a public offense while, as a result of a mental illness or defect, he is unable to understand the proceedings against him or to assist in his own defense."

Appellant's mental condition could have been asserted or inquired into at three different times in the proceedings herein.

First, under Rule 250 of the Rules of Criminal Procedure, 17 A.R.S., if the court

has "reasonable ground" to believe the defendant insane or mentally deficient, it shall set a hearing to determine the defendant's competency.

Second, at the time set for sentencing the defendant may allege, under Rules 332 and 333, Rules of Criminal Procedure, 17 A.R.S., that he has become insane since the verdict or judgment and if the court finds there is "reasonable cause to believe that the defendant is insane" the sentencing shall be postponed while two experts appointed by the court make an examination. If found to be insane the defendant shall be committed.

The third avenue open to defendant is after he reaches prison. § 31–224 A.R.S. mandates the State to provide facilities when a prisoner manifests symptoms of mental illness.

The prison has not acted under § 31–224 A.R.S. and the matter was not raised under Rule 333 of the Rules of Criminal Procedure, 17 A.R.S. The thrust of appellant's argument is that because of information received at or before the time of sentencing, Rule 250 would apply even though the rule appears to be limited to "before or during trial". Rule 250, Rules of Criminal Procedure, 17 A.R.S., reads as follows:

> "*Rule 250. Examination of defendant's mental condition prior to or during trial; proceeding with trial or commitment of defendant to institution*
>
> "A. *If before or during the trial* the court has reasonable ground to believe that the defendant, against whom an indictment has been found or information filed, *is insane or mentally defective,* to the extent that he is unable to understand the proceedings against him or to assist in his defense, the court shall immediately set a time for a hearing to determine the defendant's mental condition. \* \* \*" [Emphasis added]

We are of the view that Rule 250 does apply to this case. We feel that Rule 250's reference to "before or during a trial" logically encompasses the sentencing proceeding that occurred six days later and this is true even though there may be some overlapping of the time in which Rule 250 and Rule 333 apply.

This Court has previously held that Rule 250 does not preclude a trial court from ordering a hearing on its own motion:

> "We are convinced that whether a hearing should be held on the issue of defendant's competency to stand trial should not turn on whether a timely request is made. Our own rule does not preclude the judge from invoking the procedure *sua sponte* if he has reasonable ground to question defendant's competency to stand trial. This is true whether it is in reference to an initial sanity hearing or a subsequent hearing after it has been reported that the defendant is competent to stand trial." State v. Bradley, 102 Ariz. 482, 487, 433 P.2d 273, 278 (1967).

This cannot be waived by the defendant:

> "The State insists that Robinson deliberately waived the defense of his competence to stand trial by failing to demand a sanity hearing as provided by Illinois law. But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial. See Taylor v. United States, 282 F.2d 16, 23 (C.A.8th Cir. 1960)." Pate v. Robinson, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815, 821 (1966).

A reading of the probation report and the action of the court in recommending "to the Warden of the Arizona State Penitentiary that he make every possible effort to incarcerate" appellant "in the Arizona State Hospital for treatment" indicates to us that the court not only had reasonable ground to but did, in fact, question appellant's competence. The New Mexico Court of Appeals has stated:

> "At the time defendant entered his plea, his attorney suggested that defendant be given psychiatric and medical care. The

trial court, in its judgment, recommended that defendant be given such care. In Praylow v. United States, 298 F.2d 792 (5th Cir. 1962), a similar recommendation by the trial court, accompanied by meager factual allegations, was held sufficient to require a hearing." State v. Guy, 79 N.M. 128, 131, 440 P.2d 803, 806 (1968).

It is possible that the trial court felt that while the appellant was mentally retarded, he was not retarded to such a degree that he was unable to either understand the proceedings against him or to assist in his own defense. We would have no quarrel with this conclusion had it been reached after a proper hearing:

"A person may be mentally competent to stand trial although upon other subjects his mind may be unsound. There are many prisoners who, although competent to stand trial, are mentally disturbed or defective and require psychiatric treatment. (citations omitted)

"Mental illnesses are of many sorts and have many characteristics. They may differ widely in their effects on a person's mental processes, his abilities and his behavior. To make a reasonable inference concerning the relationship between an alleged mental condition and the accused's competence to stand trial, the trier of the facts must be informed with some particularity. Labeling one's condition as that of insanity without any description of the particular actual manifestations of the alleged disease is insufficient pleading of mental incompetence to stand trial. Insanity in its popular sense signifies an unsoundness of mind, a derangement of the intellect; it may be complete or partial. It can vary from time to time. As such it does not necessarily connote incompetence to stand trial." Thursby v. State, Me., 223 A.2d 61, 68 (1966).

We are unable to conclude from the record that appellant was competent to enter a plea of guilty even though after a proper hearing the trial court may well find that defendant was competent to so plead.

It is therefore ordered that this cause be remanded to the Superior Court for a Rule 250 hearing to determine whether the appellant was, at the time he entered his plea of guilty, insane or mentally defective to the extent that he was unable to understand the proceedings against him or to assist in his defense.

STRUCKMEYER, C. J., and HAYS, V. C. J., concur.