495 P.2d 847

**The STATE of Arizona, Appellee,**

**v.**

**Neil Henry NIELSEN, Appellant.**

**No. 2253.**

Supreme Court of Arizona,
In Banc.

April 14, 1972.

Rehearing Denied May 9, 1972.

**252**

Gary K. Nelson, Atty. Gen. by Paul J. Prato, Asst. Atty. Gen., Phoenix, for appellee.

Howard A. Kashman, Pima County Public Defender by Eleanor Daru Schorr, Deputy Public Defender, Tucson, for appellant.

CAMERON, Vice Chief Justice.

This is a delayed appeal from a judgment of guilt after a plea of guilty to first degree murder and a sentence of life imprisonment with a recommendation of no parole.

Three questions are presented for review:

1. Should the trial court have ordered a Rule 250 hearing?

2. Was the guilty plea voluntarily and intelligently made?

3. Did the trial court exceed its jurisdiction by recommending no parole?

The facts necessary for a determination of this matter are as follows. On 20 September 1967, defendant, a generally peaceful 57 year old man, who was held in high esteem by those in the neighborhood who knew him, shot and killed his 19 year old wife. He had one prior conviction for felonious assault.

On 21 November 1967, defendant was arraigned in the Superior Court and entered a plea of not guilty to the open murder charge. Between 21 November 1967 and 8 March 1968, when defendant changed his plea to guilty of first degree murder, defendant's counsel petitioned the court for time, permission, and funds to conduct psychiatric tests on the defendant. The funds were denied, but it appears that the defendant was examined by a psychiatrist. On 8 March 1968, the plea was accepted and on 15 March 1968, Judge Collins of the Superior Court of Pima County sentenced defendant to life imprisonment with "the recommendation that your imprisonment for life be without possibility of parole."

## SHOULD THE TRIAL COURT HAVE ORDERED A RULE 250 HEARING?

Rule 250, subd. A, Rules of Criminal Procedure, 17 A.R.S. reads as follows:

"Rule 250. Examination of defendant's mental condition prior to or during trial; proceeding with trial or commitment of defendant to institution

"A. If before or during the trial the court has reasonable ground to believe that the defendant, against whom an indictment has been found or information filed, is insane or mentally defective, to the extent that he is unable to understand the proceedings against him or to assist in his defense, the court shall immediately set a time for a hearing to determine the defendant's mental condition. The court may appoint two disinterested qualified experts to examine the defendant with regard to his present mental condition and to testify at the hearing. Other evidence regarding the defendant's mental condition may be introduced at the hearing by either party."

Defendant asserts that the trial judge should have ordered a hearing under the above rule before accepting his guilty

plea. We have stated that Rule 250 applies to cases which result in guilty pleas as well as cases that go to trial. State v. Davis, 106 Ariz. 598, 480 P.2d 354 (1971) and that the trial court has broad discretion in deciding whether to order a hearing. We will uphold the trial court in not ordering a Rule 250 hearing unless there has been a clear abuse of that discretion. State v. Boag, 104 Ariz. 362, 453 P.2d 508 (1969); State v. Bradley, 102 Ariz. 482, 433 P.2d 273 (1967); State v. McClendon, 101 Ariz. 285, 419 P.2d 69 (1966); State v. Reid, 87 Ariz. 123, 348 P.2d 731 (1960); State v. Tillery, 107 Ariz. 34, 481 P.2d 271 (1971).

Insanity at the time of the crime is a matter for defendant's lawyer and the finder of fact at trial and not a matter for a Rule 250 hearing. State v. Thomas, 78 Ariz. 52, 275 P.2d 408 (1954).

A careful examination reveals that every piece of evidence before the trial court concerning defendant's mental condition went directly to his possible insanity at the time of the shooting, and not to his competency to stand trial. Nothing in the record before this court indicates that the defendant was incompetent to stand trial or to enter a plea and we hold that the court did not abuse its discretion in failing to order a hearing under Rule 250 of the Rules of Criminal Procedure, 17 A.R.S.

## WAS THE GUILTY PLEA VOLUNTARILY AND INTELLIGENTLY MADE?

As discussed, supra, defendant pleaded guilty to first degree murder on 8 March 1968. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which imposed rather rigid requirements on the states in pleas of guilty, was decided on 2 June 1969. We have stated that Boykin, supra, is not to be applied retroactively, State v. Griswold, 105 Ariz. 1, 457 P.2d 331 (1969); therefore, this case is governed by the pre-Boykin standards of voluntariness as set forth in Griswold, supra.

The following transpired at the acceptance of the plea:

"THE COURT: Mr. Nielsen, you have heard your attorney, Mr. Minker and Mr. Seefeldt here, indicate that you wish to withdraw your plea of not guilty previously entered to the information charging you with an open charge of murder and to enter a plea of guilty to the charge of murder, first degree, as set forth on the amended information. Is that your wish to do that?

"MR. NIELSEN: That's right.

"THE COURT: I assume you have had an opportunity to talk with your attorneys about this?

"MR. NIELSEN: Yes, sir.

"THE COURT: And you have done considerable contemplation about it?

"MR. NIELSEN: I have.

"THE COURT: I understand too. Is your wish then to, on your own free will, to make this plea of guilty?

"MR. NIELSEN: I do.

"THE COURT: To murder, first degree? Do you realize then that it will be my responsibility, or if I'm not here some other Judge, to sentence you in accordance with your plea?

"MR. NIELSEN: Yes, sir."

And:

"THE COURT: You realize then, Mr. Nielsen, that in my responsibility, I must determine one thing first, as to whether to, in sentencing you on this charge, whether to give you the death sentence or give you life imprisonment?

"MR. NIELSEN: That's right.

"THE COURT: And those are the only two alternatives I have.

"MR. NIELSEN: Yes, sir.

"THE COURT: Unless, the only further alternative in any sentencing is probation, but the sentence itself would be either life or death, you understand that?

"MR. NIELSEN: I do.

"THE COURT: In entering your plea of guilty to the charge of first degree murder, Mr. Nielsen, am I to assume that you wish to admit that the charge against you in this respect is true and correct?

"MR. NIELSEN: That's right.

"THE COURT: All right. Mr. Minker and Mr. Seefeldt, may I ask you if you have any doubts in your mind but that Mr. Nielsen does intellectually understand the possible ramifications of a plea of guilty to this charge?

"MR. MINKLER: I have no doubt, Your Honor.

"MR. SEEFELDT: I have none.

"THE COURT: And you have talked with him at length, have you?

"MR. SEEFELDT: Yes.

"MR. MINKLER: Great length."

The presentence report showed a factual basis for the plea, and we have no hesitancy in stating the record affirmatively shows that the plea was voluntarily, knowingly, and intelligently made.

## DID THE TRIAL COURT EXCEED ITS JURISDICTION BY RECOMMENDING NO PAROLE?

As discussed, supra, the trial judge sentenced defendant to life imprisonment with "the further recommendation that your imprisonment for life be without possibility of parole." The judge added:

"* * * in fact I am not sure that my recommendation will have any weight whatsoever, I hesitated a long time before I added that recommendation to the sentencing because I have always had the feeling before that perhaps it was not within our purview of a judge to do that."

There appear to be two pertinent statutes, § 13-453, subsec. A, A.R.S. and § 31-402, subsec. A, A.R.S.:

"§ 13-453. Punishment for murder

"A. A person guilty of murder in the first degree shall suffer death or imprisonment in the state prison for life, at the discretion of the jury trying the person charged therewith, or upon a plea of guilty, the court shall determine the punishment."

"§ 31-402. Powers of board; powers and duties of governor

"A. The board of pardons and paroles shall have exclusive power to pass upon and recommend reprieves, commutations, paroles and pardons. No reprieve, commutation, parole or pardon may be granted by the governor unless it has first been recommended by the board."

The exclusive power of the Board of Pardons and Paroles in the area of passing upon and recommending paroles under § 31-402 A.R.S. has been tested in the courts. Both in 1926, State of Arizona ex rel. Murphy v. Superior Court, 30 Ariz. 332, 246 P. 1033, and in 1970, State of Arizona ex rel. Arizona State Board of Pardons and Paroles v. Superior Court of Maricopa County, 12 Ariz.App. 77, 467 P.2d 917, the exclusive power over parole has been reasserted to rest with the board.

■ The defendant argues that the trial judge exceeded his jurisdiction under § 13-453 A.R.S. in attempting to enlarge upon one of the two alternative punishments proscribed, and encroached upon the exclusive jurisdiction of the Board of Pardons and Paroles under § 31-402 A.R.S. to recommend paroles. While the trial court may make recommendations to the Board of Pardons and Paroles either at the time of sentencing or at the time the prisoner seeks commutation or parole [see § 31-411, subsec. C], the "no parole" recommendation is just that—a recommendation—and is not binding on the Board of Pardons and Paroles.

The sentence of life imprisonment is affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.